515 S.E.2d 107

The STATE, Respondent,

v.

James Gerald JENNINGS, Appellant.

No. 2964.

Court of Appeals of South Carolina.

Submitted Dec. 8, 1998.

Decided March 15, 1999.

84

Assistant Appellate Defender M. Anne Pearce, of SC Office of Appellate Defense, of Columbia, for appellant.

Attorney General Charles M. Condon, Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott and Senior Assistant Attorney General Harold M. Coombs, Jr., all of Columbia; and Solicitor Thomas E. Pope, of York, for respondent.

HUFF, Judge:

James Jennings was convicted of armed robbery, possession of a firearm during the commission of a violent crime, criminal conspiracy, pointing a firearm, and possession of a sawed-off shotgun. At trial, defense counsel made motions for directed verdict on the charges of pointing a firearm and possession of a firearm during the commission of a violent crime. The trial judge denied Jennings' motions for directed verdict, and Jennings appeals. We affirm.

## FACTUAL BACKGROUND

On the afternoon of November 24, 1995, Jennings and his cousin, James Crowder, allegedly devised a plan to rob a drug store pharmacy of drugs. Crowder testified at trial that they agreed he would guard the pharmacy counter with a gun and Jennings would present the pharmacist a note demanding drugs. On the afternoon before the robbery, at Jennings' direction, Crowder retrieved his sawed-off shotgun from his mother's home.

When Jennings and Crowder entered the drug store, Crowder initially concealed the shotgun under a jacket. Crowder stood to the side of the pharmacy counter while Jennings presented the pharmacist with a note demanding "K–2's and K–4's." Jennings ordered the pharmacist not to "screw around with us. Give us what we want."

Jennings told Crowder to reveal the shotgun to the pharmacist, so Crowder uncovered the gun and immediately covered it back up with the jacket. Jennings began arguing with the pharmacist, and Jennings instructed Crowder to go behind the counter with the pharmacist. When Crowder hesitated, Jennings shoved Crowder behind the counter, at which time Crowder pulled out the shotgun and pointed it at the pharmacist.[1] The pharmacist handed the pills over to Jennings, and Jennings and Crowder fled. They returned to Jennings' trailer, and pursuant to Jennings' instructions, Crowder buried the shotgun behind the trailer.[2]

In a statement to police, Crowder said that Jennings had a .25 caliber pistol in his possession during the robbery. At trial, Crowder testified that he could not remember whether Jennings had a gun during the robbery. He noted that the statement to police was taken closer in time to the robbery and that he "would have recalled more then than ... now."

At trial, Crowder testified that Jennings was the "ringleader" of the robbery. Additionally, the pharmacist testified that Jennings seemed to be in charge because Jennings was making all the demands.

## DISCUSSION

On appeal, Jennings argues that the trial judge erred in denying his motions for directed verdict on the charges of pointing a firearm and possession of a firearm during the commission of a violent crime.

When reviewing the denial of a motion for directed verdict in a criminal case, the evidence must be viewed in the light most favorable to the state. *State v. Huggins*, 325 S.C. 103,

---

1. The pharmacist testified that he thought the gun was pointed at him but was trying not to watch it.

2. Jennings instructed Crowder to hide the shotgun in the woods, but Crowder buried it instead.

481 S.E.2d 114 (1997). This court is concerned with the existence or non-existence of evidence and not its weight. *Id.* In order to survive a motion for directed verdict, the state must present any direct evidence or substantial circumstantial evidence which reasonably tends to prove the defendant's guilt, or from which the defendant's guilt can be fairly and logically deduced. *Id.; State v. Green,* 327 S.C. 581, 491 S.E.2d 263 (Ct.App.1997).

## I. POSSESSION OF A FIREARM DURING THE COMMISSION OF A VIOLENT CRIME

■ Jennings argues he was entitled to a directed verdict on the charge of possession of a firearm during the commission of a violent crime.[3] He asserts there is no evidence he possessed the gun at the time of the armed robbery. The trial judge denied Jennings' motion for directed verdict, based upon *State v. Halyard,* 274 S.C. 397, 264 S.E.2d 841 (1980), ruling that constructive possession was applicable in regard to possession of firearms.

■ In *Halyard,* the South Carolina Supreme Court resolved the issue of whether a person not in actual possession of a firearm could nevertheless be convicted for possession of the firearm. The Court first noted the long recognized rule that "possession of contraband drugs" could be shown by either actual or constructive possession. *See State v. Hudson,* 277 S.C. 200, 284 S.E.2d 773 (1981); *see also State v. Peay,* 321 S.C. 405, 468 S.E.2d 669 (Ct.App.1996). The Court then held that the principles relating to constructive possession are also "applicable in regard to possession of firearms or other objects." *Halyard,* 274 S.C. at 400, 264 S.E.2d at 842. Thus, pursuant to *Halyard,* one can be convicted of possession of a firearm based upon proof of either actual or constructive possession.

■ Proof of constructive possession, along with knowledge of the presence of the firearm, is sufficient to support a conviction for possession of a firearm. *Hudson, supra; Hal-*

---

**3.** S.C. Code Ann. Section 16–23–490(A) (Supp. 1998) provides in part the "[i]f a person is in possession of a firearm ... during the commission of a violent crime and is convicted of committing ... a violent crime ... he must be imprisoned five years, in addition to the punishment provided for the principal crime."

*yard, supra.* "To prove constructive possession, the state must show that the defendant had dominion and control, or the right to exercise dominion and control, over the firearm." *Halyard,* 274 S.C. at 400, 264 S.E.2d at 843. Constructive possession may be established through either direct or circumstantial evidence, and possession may be shared. *Hudson, supra; Halyard, supra.* Possession requires more than mere presence. *State v. Ballenger,* 322 S.C. 196, 470 S.E.2d 851 (1996); *State v. Mollison,* 319 S.C. 41, 459 S.E.2d 88 (Ct.App. 1995).

The facts, viewed in a light most favorable to the state, show that Jennings was the "ringleader" of the robbery. Jennings directed Crowder to retrieve the shotgun for use in the robbery. During the robbery, Jennings instructed Crowder to reveal the gun, and Crowder complied. Jennings also directed Crowder to hide the shotgun after the robbery. We find the evidence was sufficient to create a jury issue in regard to whether Jennings exercised such dominion and control over the shotgun to amount to constructive possession. The trial judge correctly ruled that Jennings could be convicted of possession of a firearm during the commission of a violent crime even though Jennings never actually possessed the shotgun during the armed robbery. Therefore, the trial judge properly denied Jennings' motion for directed verdict.

## II. POINTING A FIREARM

Jennings also maintains he was entitled to a directed verdict on the charge of pointing a firearm because he never actually possessed the gun during the robbery, and therefore could not have pointed the firearm in violation of the statute. The statute provides that it is "unlawful for a person to present or point at another person a loaded or unloaded firearm." S.C.Code Ann. § 16–23–410 (Supp.1998).

Guilt as a principal is established by presence at the scene through prearrangement to aid, encourage, or abet in the perpetration of a crime. *State v. Chavis,* 277 S.C. 521, 290 S.E.2d 412 (1982); *State v. Hill,* 268 S.C. 390, 234 S.E.2d 219 (1977), *cert. denied,* 434 U.S. 870, 98 S.Ct. 211, 54 L.Ed.2d 147 (1977). "When several people pursue a common design to commit an unlawful act and each takes the part agreed upon or assigned to him in an effort to insure the success of the

common undertaking, 'the act of one is the act of all and all are presumed to be present and guilty.' " *Chavis*, 277 S.C. at 522, 290 S.E.2d at 412 (quoting *State v. Gilbert*, 107 S.C. 443, 446, 93 S.E. 125, 126 (1917)). The *Chavis* court found that although the defendant did not accompany the actual perpetrators during the armed robbery[4], the denial of a directed verdict motion was proper where the defendant "helped plan the robbery, provided necessary weapons ... and received a portion of the proceeds." *Chavis*, 277 S.C. at 523, 290 S.E.2d at 413.

Here, the record fully supports the submission of the case to the jury. The record reflects that Jennings orchestrated the robbery from its inception. Crowder testified that Jennings "talked about exactly what each one of us was going to do." He directed Crowder to obtain a weapon for use in the robbery. He told Crowder to point the firearm at the pharmacist. Crowder stated Jennings pushed him behind the counter, where Crowder again pointed the gun. The question of whether Jennings was guilty of pointing a firearm was an issue for the jury to decide. We affirm the trial court.

**AFFIRMED.**

CONNOR and HEARN, JJ., concur.

---

4. We note that in the case before us there is no dispute about the appellant's presence during the armed robbery.